(No. 18749.—

THE EAST ST. LOUIS LIGHT AND POWER COMPANY, Appellee, *vs.* CHARLES COHEN *et al.* Appellants.

*Opinion filed December 20, 1928.*

J. J. Bullington, for appellants.

Farmer & Klingel, for appellee.

Mr. Commissioner Partlow reported this opinion:

This is an appeal from a judgment of the county court of St. Clair county in a condemnation proceeding instituted by appellee, the East St. Louis Light and Power Company, against appellants. As grounds for reversal it is urged that the jury did not award the full measure of damages shown by the evidence, that proper evidence was excluded, improper instructions given and improper argument made.

The land consisted of two tracts, one belonging to the appellants the Cohens and the other belonging to appellant Brenner. The Cohen tract contained 45 acres and was about one and a half miles long and 250 feet wide. The Brenner land is east of the Cohen land and consists of two tracts, one of 8.6 acres and one north of it of 109 acres. The purpose of condemnation was to secure the fee for towers to be erected to support high-tension wires, together with an easement 66 feet wide between the towers, with the right of ingress and egress to maintain the wires. The towers were to be from 15½ to 18 feet square at the base and about 700 feet apart. Upon the towers there were to be cross-arms not less than 40 feet above the ground. The wires were to be suspended from the cross-arms so that the mini-

mum clearance above the ground would not be less than 20 feet. On the Cohen land thirteen towers were to be located, the fee was to be acquired in .081 of an acre, for which $60 compensation was allowed by the jury, which was at the rate of about $740 per acre. The 66-foot strip on the Cohen land contained 11.98 acres, for which $3450 was allowed by the jury for the easement, which was at the rate of about $300 per acre. On the Brenner land there were to be eight towers, occupying .053 of an acre, for which the jury allowed $30, which was at the rate of about $566 per acre. The 66-foot strip on the Brenner land contained 9.07 acres, for which $2080 was allowed for the easement, which was at the rate of about $230 per acre. The jury allowed no damage to land not taken outside of the 66-foot strip, a cross-petition having been filed by appellants claiming damage to such land.

It is agreed that if the land was only available for farming purposes it was worth from $200 to $300 per acre, the amount of the judgment was sufficient, and it should be affirmed. Appellants claim, however, that the land is not only available for farming purposes but is also available for industrial and subdivision purposes, is worth from $500 to $1500 per acre, and they were entitled to damages to land not taken. Witnesses were examined on both sides and the jury viewed the premises. The land is one mile south of the city limits of East St. Louis and four and a half miles from the business center. It has always been used for farming purposes. North of this land, and outside of the city limits, is the Orthwein tract of about 500 acres. North of the Orthwein tract is another large tract, which is also outside of the city limits. Neither of these tracts is used for industrial purposes. In the immediate vicinity are several small villages, and there are several factories, some of which are of considerable size. The west end of the Cohen tract is crossed by the Missouri Pacific and Cotton Belt railroads, and their tracks are used for

switching purposes by the Terminal railroad and the Alton and Southern railroad. There is a street car line about a quarter of a mile from the land. The Illinois Central railroad is within the same distance, and its switch yards are about one-eighth of a mile from the east end of the Brenner tract. The switch yards of the Southern railroad are about half a mile from the east end of the Brenner tract. On the Cohen tract is a small swag, where a canal of a sanitary district crosses it. There are several acres which can not be cultivated in the wet season. There are one or two smaller swags on the Brenner land.

There is considerable conflict in the evidence as to the availability of this land for industrial and subdivision purposes and its value as such. Some of the witnesses for appellee testified that from one-third to one-half of the west end of the Cohen tract was within the industrial area; that the Brenner land was not within this area; that the part within the industrial area was worth from $500 to $600 per acre and the balance was worth $200 per acre. Several witnesses for appellants testified that all of the land was within the industrial area. Five of them placed the Cohen land at from $1000 to $1200 per acre, one placed it at from $1200 to $1300 per acre, and another at $1500 per acre. One of appellee's witnesses placed the Cohen tract at $200 per acre, another at $500, and another at $700. Most of the witnesses testified that the Cohen tract was more valuable than the Brenner tract on account of its location, but one of appellants' witnesses placed the Brenner tract at $1500 per acre and the Cohen tract at $200 per acre. It is apparent that there is considerable farm property available in this immediate vicinity for both industrial and subdivision purposes; that the value of the land in question for these purposes is more or less a matter of opinion, with various ideas on which to base it. At some time in the future the land may be used for industrial purposes or may be subdivided, but that is a matter of considerable uncer-

tainty. The price awarded for the land actually taken is well within the range of the evidence as to its value. When we consider that the fee to the 66-foot strip was not taken from appellants, that they will have the right to farm this strip with only such interference as is necessary to maintain the wires, we do not think the amount awarded by the jury as the value of this easement was in conflict with the preponderance of the evidence.

Appellants complain that no damage was allowed for land not taken outside of the 66-foot strip. This land was not described in the petition. The claim for damage to it was set up in a cross-petition by appellants and the burden was upon them to prove this damage. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) To warrant a recovery for damages to land not taken the evidence must show that there will be some proximate and direct physical disturbance of property or a right of property, by reason of which damage results in excess of that sustained by the general public. (*Illinois Power and Light Corp.* v. *Parks,* 322 Ill. 313.) Opinions of witnesses must be based upon elements of damage which are recognized in law as proper to be considered. (*City of Chicago* v. *Chicago City Railway Co.* 302 Ill. 57; *Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 id. 299.) The mere fear of a remote and contingent injury which may never occur and whose happening is speculative and uncertain is not a proper element of damage. The damage allowed must be direct and proximate. *Department of Public Works* v. *Griffin,* 305 Ill. 585.

Five witnesses testified to the damage to land not taken and not included within the 66-foot strip. The elements consisted of the narrowing of the 250-foot strip by deducting from it the 66-foot strip, leaving the remaining land irregular in shape; the danger and unsightliness of the towers and wires; the obstruction by the wires to a three or four-story building which might be erected for factory

purposes on the 66-foot strip; and the fact that the record of the easement would appear on the abstract of title and would affect the sale of the land. Two witnesses testified that for industrial purposes the line would be a benefit to the remainder of the land. We think the first element of damage above mentioned is the only one which could reasonably be made the basis of a recovery, and when all of the facts are considered, including the amount of land taken, the damages awarded and the situation of the premises after the line is constructed, we are of the opinion that the amounts awarded, under the evidence, fully compensated appellants for their property, both as to the value of land taken and damage to land not taken.

Complaint is made that the court refused to permit a witness to testify to the steps which had been taken to locate an airport on this land. Appellants offered to prove that this land and adjoining land had been recommended for an airport for the city of East St. Louis by experts, who made an investigation for the purpose of determining the most available land for that purpose. Witnesses were permitted to testify whether or not in their opinion this land was adapted to use for aeroplane landings. The jury had a right to take into consideration this use in determining the value of the land. None of the witnesses pretended to say that they knew of their own knowledge what steps had been taken to establish an airport or what benefit in dollars and cents this fact would be to the land. The evidence was properly limited to the purpose for which the land might be used.

The court struck from the record the testimony of two witnesses as to damage to land outside of the 66-foot strip because they included as an element the fear people would have of injury from high-tension wires. The fear of persons in this respect was not a proper element of damage and the evidence was properly excluded.

Complaint is made of the exclusion of the testimony of one witness who based his estimate of damages on the fact that at some future time the land might become valuable. The real test was the present value of the land and not at some future time.

The 37th instruction told the jury that in determining the value of the land taken, the fair cash market value at the present time should be allowed and not its value at some future time, and whether the land might be worth more in a year or five years should not be the basis of the verdict. It is conceded that this instruction was correct in directing the jury to consider the present fair cash market value, but it is insisted that it was misleading because it told the jury that they had no right to consider what the land might be worth in a year or five years. The instruction was not misleading. It stated a correct rule of law. It was not erroneous in making reference to the value of the land at some future time.

The 38th instruction told the jury that in assessing the damages to land not taken they should not consider damages which were remote, imaginary, uncertain or speculative. It is insisted that all elements which were remote and uncertain were stricken and the instruction left the jury to speculate as to what testimony was remote and uncertain. This instruction was in accordance with the rules of law and there was no error in giving it.

Complaint is made of a remark made to the jury by counsel for appellee in his argument, but we do not think it would justify a reversal of the judgment.

We find no reversible error and the judgment will be affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*