## RYAN v. UNITED PARCEL SERVICE, Inc.

No. 228, Docket 22642.

United States Court of Appeals
Second Circuit.

Argued May 4, 1953.

Decided June 18, 1953.

Archie Elkins, Jersey City, N. Y. (Nathan Frankel, New York City, of counsel), for plaintiff-appellee.

John P. Smith, New York City (Walter G. Evans, New York City, of counsel), for defendant-appellant.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This is an action under the New Jersey wrongful death statute. N.J.S.A. 2A:31–1 et seq. Jurisdiction rests on diversity of citizenship. Ryan was killed when his car collided with defendant's truck driven by its employee Coyle. The issues were negligence and contributory negligence. Defendant appeals from a judgment entered on a jury verdict of $95,000 for plaintiff.

The accident occurred at the intersection of Avenue C and Schley Street, in Jersey City, New Jersey. Ryan was driving his

car southerly on Avenue C. The parties stipulated as follows: The defendant's truck was traveling in an easterly direction on Schley Street and admittedly had a green traffic light in its favor as it approached the intersection of Avenue C, and the light was still green as it entered the intersection and at the time of the collision. The red light governing the approach of automobiles from the north on Avenue C was not operating at the time of the accident. Ryan had previously been over the intersection where the accident happened; he knew there was a traffic fixture producing a red light, amber light, and green light for a car going south at that corner; on other occasions it had shown these various colors; he was over the intersection going in the same direction, southerly, on the night before, and at that time the red light was out.

The plaintiff produced an eyewitness to the accident, one Perlman. He testified that he was driving his automobile south on Avenue C in the same direction and behind the decedent's car; that as he approached the intersection where the accident happened he was about 20 feet behind Ryan's car; that they were both going about 20 miles an hour; that it was raining very hard; that as Ryan's car got near the intersection, it slowed down to about six to ten miles an hour; that he, Perlman, looked both ways and saw defendant's truck to the right about 150 feet away from the corner coming east; that Ryan's car was then "just on the corner starting to move"; that when about three-quarters of the way across the intersection, Ryan's car swung to the left and was struck in the right middle by the front left fender of the truck. He further testified that the truck was 125 feet from the intersection when Ryan's car entered the intersection; that it was going about six to ten miles an hour and the truck about 40 to 50 miles an hour. On cross-examination, Perlman testified that he was about 150 to 200 feet from the intersection when he saw the truck; that the truck was then about 150 feet from the intersection or about 250 feet from him; that

Ryan's car was about 15 or 20 feet ahead of him at this time and that he kept about the same distance behind it all the way to the corner; that he was going at about the same speed as Ryan, about 10 to 15 miles an hour; that although both Ryan and the truck were approximately the same distance from the corner; and although decedent was going 10 or 15 miles an hour and the truck 40 to 50 miles an hour, nevertheless, Ryan's car got to the intersection before the truck. He also testified that although Ryan's car was going only six to ten miles an hour as it approached the corner, it slowed down to about two miles an hour right at the corner, and then started up again at about six to ten miles an hour.

Perlman was the only eyewitness produced by the plaintiff. Defendant produced an eyewitness to the accident, James Mulroy. He testified that he was driving a car westerly on Schley Street opposite to the direction that the truck was going; that as he approached Avenue C, the light was green; that when he was about 15 feet from the corner, he saw Ryan's car coming from the right and the truck coming in the opposite direction to him, and that he saw both at about the same time; that he first saw Ryan's car about 15 feet from the corner and that at that time, the truck was past the corner coming into the intersection.

Defendant's driver, Coyle, testified that it was raining very hard at the time of the accident, practically a cloudburst; that he was traveling about 20 miles an hour going east on Schley Street; that he saw the traffic light was green; that when about 15 feet from the corner of Avenue C, he saw Ryan's car to his left on Avenue C to the north of Schley Street and about 40 to 50 feet from Schley Street; that the light was still green for him and that he kept going, expecting Ryan to stop for a red light; that he did not know that the red light for southbound traffic on Avenue C was not working; that as he passed the corner, he saw Ryan was still coming; that he, Coyle, jammed on his brakes and swung right, but his left front wheel col-

lided with the right front and middle of Ryan's car; at the time he jammed on his brakes and swerved right, he was about 10 or 15 feet from the point of collision.

On cross-examination, Coyle denied having had a conversation with Captain Koenigsberg of the Bayonne Police Department a short time after the accident. In rebuttal, Koenigsberg, called by the plaintiff, was permitted to testify over objection that he had such a talk with Coyle shortly after the accident and to testify further as to statements then made by Coyle to him; these statements in several respects were contradictory of Coyle's testimony. Defendant then called Detective Gleason of the Jersey City Police who testified that on the day of the accident he had taken a statement from Coyle, reduced it to writing, and that Coyle had signed it. Defendant offered in evidence this statement which corroborated much of Coyle's testimony. The judge excluded all but that portion which contradicted Koenigsberg's testimony regarding Coyle's statement concerning his rate of speed. Defendant's counsel then stated that he offered Gleason's statement not only for the purpose of impeaching Koenigsberg but for the purpose of showing that Coyle's testimony was not of recent fabrication.

■ 1. We think the court correctly ruled with respect to the statement given to Gleason. Such a statement, confirmatory of a witness's testimony, is admissible only where that testimony has been assailed as a fabrication and the offered statement antedated the existence of a motive to fabricate.[1] All else aside, here such a motive existed at the time Coyle made the statement.

[2] 2. Defendant requested the judge to charge the jury that Koenigsberg's testimony about Coyle's statement to him was to be considered solely for purposes of impeaching Coyle's testimony and not as affirmative proof. The judge denied the request. This was error. It will not do to say that the error was harmless solely because there was enough other competent evidence to sustain the verdict and the evidence erroneously received was cumulative. Clearly, the question of the sufficiency of competent evidence to sustain a verdict is not identical with the question of the harm done by receiving evidence erroneously.

■ 3. Ryan was killed instantly in the collision, and defendant at pre-trial and upon the trial of the action conceded that death resulted from the accident. Plaintiff put in evidence two photographs, which showed clearly the damage to the car Ryan was driving; and defendant made no objection. However, plaintiff also offered in evidence a photograph, Exhibit 8, which showed Ryan's body, hanging out of the doorway of the car, with his head below the runningboard and almost on the ground, and a condition of the head which was either blood or an opening in the skull. Defendant objected, on the ground that it was unnecessary, extremely prejudicial, and tending to inflame the jury. Defendant's objection was overruled, and the photograph was shown to the jury. As defendant's objection was well founded, the trial judge erred in this respect.

■ 4. The judge refused the following requests to charge made by defendant:

"4. In view of the fact that the traffic light was green for the defendant's truck, defendant's driver had a right to believe that it was red against Ryan.

"5. In view of the fact that the traffic light was green for defendant's truck and the driver had a right to assume that it was red for the plaintiff's intestate Ryan, the driver had a right to assume further that Ryan would stop at the corner before entering the intersection.

"6. The defendant's driver had a right to proceed after first seeing plaintiff's intestate Ryan some distance north of the

1. See, e. g., Wigmore, Evidence (2d ed.) § 1129; Di Carlo v. United States, 2 Cir., 6 F.2d 364, 366; Affronti v. United States, 8 Cir., 145 F.2d 3, 7; United States v. Sherman, 2 Cir., 171 F.2d 619, 622.

intersection, and was under no duty to apply his brakes until after he realized that Ryan was not stopping at the corner.

"7. The defendant's driver was under no duty of making any effort to avoid a collision until after he realized that plaintiff's intestate Ryan was not intending to stop at the corner."

We think this denial was erroneous especially as, in his charge, the judge said, *inter alia*: "Thus, if you find that Coyle saw Ryan's car at a sufficient distance away, so that in the exercise of reasonable care he could have stopped his truck or otherwise avoided the collision but did not, you may find that his conduct was negligent." It is urged that the error was cured because, in his charge, the judge also made the following statement: "The New Jersey law, which is controlling here, gives the right of way to a driver who has a green light in his favor, but this does not give him the privilege of insisting on his right of way without regard for the safety of others. Coyle's right of way on the green light must have been exercised reasonably in the light of all the circumstances. In determining whether Coyle was negligent, you may, of course, take into account the fact that he had the green light, along with all other factors." While it is true that the fact Coyle had the green light does not conclusively negative negligence, yet that fact must be taken into account in determining whether he was negligent; but the judge said merely that it "may" be so taken. We repeat the warning given in Walker v. Lykes Bros. S. S. Co., 2 Cir., 193 F.2d 772, 792, that when, in a negligence case, a judge refuses a request to give specific charges, then his charge must not be so general as to afford the jury no adequate assistance in fixing the standard of care that the circumstances may require.

Although perhaps no one of the errors standing alone would call for reversal, in their totality they do.

Reversed and cause remanded for a new trial.