**George F. BUZZARD et al., Appellants,**

v.

**MAPCO, INC., Appellee.**

**No. 8371.**

Court of Civil Appeals of Texas, Amarillo.

Aug. 29, 1973.

Second Motion for Rehearing Denied Sept. 24, 1973.

Countiss & Blackburn, Richard N. Countiss, Spearman, Linn, Helms & Kirk, Oklahoma City, Okl., for appellants.

Royse M. Parr, Tulsa, Okl., Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Perryton, for appellee.

## ON MOTION FOR REHEARING

ELLIS, Chief Justice.

Our original opinion is withdrawn, and the following opinion, issued subsequently to appellee's motion for rehearing, is substituted therefor:

This is an appeal by the landowners from a judgment involving two condemnation cases consolidated for trial. The judgment of the trial court is reversed and the cause is remanded.

Mid-America Pipeline Company, now MAPCO, INC., initiated condemnation proceedings against George F. Buzzard, et al., and Elizabeth Cox Lynn, et al., respectively, in separately filed cases in the County Court of Ochiltree County, Texas. These two cases were consolidated for trial. As to the Buzzard tract, the Southeast one-fourth (SE 1/4) of Section 26, Block 4-T, T&NO Ry. Co. Survey, in Ochiltree County, Texas, MAPCO sought to condemn a strip of land 50 feet wide for a distance of 2165 (131.21 rods). The surveyed line begins in the south line of such Section 26, at a point 1300 feet from the southeast corner, and runs diagonally to the east line, to a point 1780 feet from the southeast corner of the section. On the Lynn tract, Section 44, Block 4-T, T&NO Ry Co. Survey, in Ochiltree County, Texas, MAPCO sought to condemn a strip of land 50 feet wide for a distance of 6,560 feet (397.58 rods). The surveyed line begins at a point in the south line of Section 44, at a point 120 feet east of the southwest corner, and runs a distance of 220 feet at an angle of N 22° 30' E, and then continues a distance of 6,340 feet at an angle of N 35° 20' E to a point in the north line, 1300 feet from the northeast corner of such Section.

In regard to the Buzzard tract, the petition for condemnation involves the construction and maintenance of a pipeline not to exceed eight and five-eighths (8⅝" outside diameter) for the transportation of anhydrous ammonia. The petition further sets out that MAPCO would ac-

quire the right to clear all trees, undergrowth and other obstructions from the right-of-way. The building, construction or maintenance of any building or other structure on said right-of-way which would interfere with the normal operation and maintenance of said pipeline was prohibited. MAPCO is required to bury the pipeline at least thirty-six inches (36") below the surface of the ground and is to locate any valves or other appurtenances installed, if any, which may be at or above the surface of the ground at a location adjacent to the property line, fence line and/or roadway line of the land so as not to unduly obstruct or interfere with the use of the land by the landowners. The surface over the pipeline is to be filled and graded so as to restore as nearly as practicable its original level. The landowners, their heirs, successors and assigns, shall have the right to fully use and enjoy the land, subject only to the rights acquired by MAPCO. The petition of condemnation for the Lynn tract contains the identical provisions relative to construction, maintenance and usage as the above except for the outside diameter of the pipeline which is to be only six and five eighths inches (6⅝").

Both tracts of land are watered from wells by row irrigation. The landowners-appellants introduced testimony of the tenant farmers, who were then farming the land, concerning the difficulty in preparing, cultivating and irrigating the land because of the presence of the pipeline. Although a decrease in market value could be inferred from this testimony, the appellants presented only one witness, Emmett Sanders, to testify as to the value of the land before and after the condemnation for the easement. In regard to the Buzzard tract, he testified that the easement covered approximately 2.5 acres, which he valued at $350 an acre before the easement and $175 after the easement. This was a decrease in value of $437.50. The remaining portion of the quarter section (157.5 acres) was valued at $350 an acre before the

pipeline and $300 an acre after the construction. The decrease in value on the remaining portion is $7,875.00. As to the Lynn tract, he stated that the easement covered approximately 7½ acres and that the value of this 7½ acres was about $350 an acre before the MAPCO pipeline was installed and $175 an acre after the installation. This is a decrease in value of $1,312.50. He valued the remaining portion of the section (632.5 acres) at $350 an acre before the MAPCO pipeline installation and $300 an acre after the pipeline construction. The decrease in value of the remainder is $31,625.00. In arriving at the above figures, Sanders stated that he primarily used the comparable sales in the area method. He also testified that he took into consideration such matters as crop allotment, yield record, number of acres permissible for planting in particular crops, and any factor that would detract from prospective income in determining the effect of the easement on the valuation. He also expressed the opinion that the dangerous nature of anhydrous ammonia adversely affected the value of the land.

The only expert appraiser presented by MAPCO was Douglas Marshall, who valued the approximately 7.5 acre strip on the Lynn tract at $325 an acre before the pipeline and testified that it decreased in value by 50% which is a $1,174.38 decrease. He valued the approximately 2.5 acre strip on the Buzzard tract at $325 an acre before the installation of the pipeline and stated that the strip decreased in value as a result of the pipeline by 50%, which is a $403.82 decrease. He testified that the value of the remainder of both tracts of land were unaffected by the pipeline. He valued the remainder of both tracts at $325 before the pipeline and $325 after the pipeline. The procedure by which he followed was set out in detail. He first determined whether the land is irrigated or dryland, and whether it is fenced and has improvements. He then gathers such information as the soil types, the A.S.C. allotments, projected

yield, the number of wells on that tract, when they were drilled, their total depth, size, thickness of saturation, the static level, and anything pertinent to the production of the water. He then attempts to find sales of land comparable to the subject land.

The jury, upon special issues, found the value of the 2.5 acre strip of land in the Buzzard tract worth $875 before and $437.50 after the pipeline. The jury found the remainder of the tract worth $55,125.00 prior and $53,550.00 after the pipeline. The value of the 7.5 acre strip in the Lynn tract was found to be $2,625.00 prior and $1,312.50 after the pipeline. Finally, the jury found the remainder to be worth $221,375.00 prior and $215,050.00 after the pipeline. A judgment was rendered consistent with these findings. From such judgment the landowners have appealed.

The appellants have raised fifteen points of error on appeal pertaining primarily to the admission or exclusion of certain evidence. These assignments of error were discussed in six separate areas by the appellants and will be so treated here. The first point of error pertains to the admissibility of certain testimony on the dangerous nature of the product being transported by MAPCO. The second group (points nos. 2, 3 and 4) concerns the admissibility of evidence of certain sales made in Parmer County as comparable sales. The third area (points nos. 5, 6 and 7) pertains to the admissibility of existing easements on the condemned tracts with charts illustrating certain terms of such easements. The fourth area (points of error nos. 8–13) pertains to various aspects of "future damages," including the trial court's allowance of appellee's amendment of its pleading prior to submission of the charge to the jury, the court's refusal to allow argument. re-opening of evidence, or appellants' requested instruction concerning future damages, and the court's entry of a judgment without defined obligation upon appellee to pay future damages. The fifth area (point no. 14) pertains to the allowance of inter-

est to condemnors on sums withdrawn in excess of the amount of the jury's verdict, and the sixth (point no. 15) relates to the assessment of costs.

Appellants' first point of error concerns the trial court's refusal to allow them to present testimony as to the dangerous nature of the product being transported by appellee across appellants' lands in the subject pipeline. Appellee claims that the trial court properly refused the appellants' offer of testimony on the dangerous propensities of anhydrous ammonia because it was offered as rebuttal testimony.

The admission of evidence in rebuttal, which at the same time is cumulative, is within the sound discretion of the trial court and unless an abuse of discretion is shown, the trial court's ruling must stand. Russ Mitchell, Inc., v. Houston Pipe Line Co., 219 S.W.2d 109 (Tex.Civ. App.—Galveston 1949, writ ref'd n. r.˙ e.). It is our opinion that a landowner is not entitled to recover an estimated amount of damages which is likely to be suffered in the future from leaks in the pipeline, but if there exists actual danger of future leaks and the land thereby suffers a present depreciation in value, then the landowner is entitled to have such facts taken into account as constituting an element of his damage. Delhi Gas Pipeline Company v. Reid, 488 S.W.2d 612 (Tex.Civ.App.—Waco 1972, writ ref'd n. r.e.). The appellants' witness, Sanders, testified concerning the dangerous nature of anhydrous ammonia and that a pipeline carrying such substance would have an effect on the market value of the land. His testimony on this issue is set out as follows:

"Q. All right. Do you know of your own knowledge, or based on your reading the petition of the pipeline company, things of this nature, do you know what this pipeline carries?

"A. Yes, I do.

"Q. What?

"A. It's an anhydrous ammonia line.

"Q. Has that had any affect (sic) on the opinions that you formed concerning the after values of this land?

"A. Yes, that would influence my decision to some extent, because I would think anhydrous ammonia would be a dangerous product."

The dangerous aspect of the product transported was one of the elements that he considered in forming his opinion on the various valuations of the land. The expert appraiser for the opposing party, MAPCO, never mentioned the dangerous propensity of the product nor did he state that he ever took the dangerous nature of the product into account. The inconsistencies of valuation puts the dangerous nature of anhydrous ammonia into issue along with all the other factors affecting market value after condemnation. The testimony, which was preserved by a bill of exception, was that of Ralph Ball, the district manager, Liberal District, Pipeline Division, of MAPCO, INC. He stated that the pressure in the line is in the area of 1200 to 1270 pounds per square inch, under normal operating conditions. He further testified since the pipeline had been installed there had been a total of three leaks in the area, i. e. in Ochiltree, Hutchinson and Hansford Counties. The leaks caused injury to crops and also the death of one steer. These specific instances show the existence of some actual danger of future leaks. Combining this with the testimony of Sanders, it is reasonable to infer that there is a present depreciation in value of the land as a result of the pipeline. In the Reid case, it was pointed out that the landowner is entitled to have such facts taken into account as constituting an element of his damage. When the trial court refused to admit this testimony relevant to valuation into evidence, which served to offset or refute appellee's previously given valuation testimony, the appellants were clearly prejudiced in that they were not allowed to establish all of the elements of their dam-

age. It is our opinion that since such testimony was pertinent to the overall "before and after" value of the land, the rejection thereof was erroneous and justifies a reversal and remand of the cause.

█ Appellants' second, third, and fourth points of error pertain to the admissibility of evidence of land sales made in Parmer County, Texas, approximately 140 miles from the land in question. Appellee introduced this evidence in the form of oral testimony combined with a chart, designated as Exhibit 34. In the case of Hays v. State, 342 S.W.2d 167 (Tex.Civ. App.—Dallas 1960, writ ref'd n. r. e.), the court stated:

"Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions."

The manner in which the sales in Parmer County were used fit only the second (II) category. They were introduced to support Marshall's expert opinion that a pipeline does not decrease the value of irrigated farmland. When admitted for this purpose it is admissible as stating the basis for the opinion given, thereby enabling the jury to test the value of the opinion evidence. Hays v. State, supra; 1 McCormick & Ray, Texas Evidence, § 835 (2d ed. 1956). Marshall's qualifications as an expert have not been questioned by the appellants. They merely question the comparability of these Parmer County lands to the lands involved here since they are located approximately 140 miles away. We here note the following significant state-

ment contained in 5 Nichols on Eminent Domain § 21.31 [1] (3rd ed. 1969):

" . . . when the value of land depends on productiveness, similarity in the character of the soil is more important than proximity, and evidence of the price paid for the land of the same physical character and which would bear the same crop is admissible, though the land is situated in another town."

We find substantial evidence in the record to establish the comparability of the lands. The Parmer tracts and the two tracts in question are irrigated from the same strata of water; they are all in the same family of soils with comparable productivity; the soils are level and naturally fertile; the crops are the same (maize and wheat); the farming practices are similar, for instance, row irrigation; and the climate and rainfall are almost the same. Additionally, Marshall stated that if Parmer County tracts were picked up and brought to Ochiltree County, most people could not tell it was a transplanted farm. The distance, although a factor to consider, is outweighed by the other factors. Although the lands are comparable for the purpose of admissibility, the matter of distance in this instance would go to the weight to be given to such evidence. It is significant that these Parmer County sales were not introduced as independent substantive evidence but as a factual basis for Marshall's opinion that pipelines do not decrease the value of irrigated farmland and as such are admissible for that purpose. City of Houston v. Collins, 310 S.W.2d 697 (Tex. Civ.App.—Houston 1958, no writ).

■ Appellants' fifth, sixth, and seventh points of error pertain to the admissibility of the terms of certain easements along with testimony and charts summarizing such easements. Appellants contend that easements sold to companies with the power of condemnation are not admissible for any purpose, yet the authorities cited by appellants pertain to the inadmissibility of the sale prices as evidence of their value in a free and voluntary market. In this connection, we note the following statement set out in Rayburn, Texas Law of Condemnation, § 143 (1960) at 432:

"The reasoning of the cases is that there is the ever present threat of condemnation, and the resigned attitude of both the buyer and the seller makes the sale more of a compromise than an actual market sale, free and voluntary." The easements introduced into evidence were not offered as evidence of comparable sales. The consideration paid was specifically excluded. The purpose of admitting these easements was twofold: first, to show how these two tracts of land were burdened prior to the MAPCO pipeline; and second, to show the greater degree of restriction on MAPCO'S easement. This evidence, when admitted for this purpose, aids in the evaluation of the land. The burdens upon the tracts and the degree of restrictions are factors in considering the value of the property. Further, the record shows that the prior easements were executed by the appellant landowners, and they could not be surprised by the introduction of such prior instruments.

■ Appellants also claim that these easements are inadmissible since the provisions of Art. 3731a, Vernon's Ann.Civ.St., pertaining to the admission of copies certified by public officials and the furnishing of copies prior to trial, were not met. Article 3731a is not applicable in this particular case. The copies of the easements were issued and certified by a privately owned abstract company and as such were not made by " . . . an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision, . . ." V. A.C.S., art. 3731a § 1.

■ The testimony of Sanders, appellants' own expert witness, and certain charts were used to illustrate and to summarize the contents of the above easements. Appellants claim that such testimony is in violation of the best evidence rule

and thus inadmissible. The best evidence rule, however, does not pertain to a situation such as this. The rule is that ". . . if the original writing is not produced or its non-production accounted for, evidence of its contents is not admissible." 2 McCormick & Ray, § 1563 (2d ed. 1956). The easements in this case were already in evidence prior to either the testimony of Sanders or the use of the charts in the presence of the jury. The terms of these easements are not in issue. From our review of the testimony we find that Sanders merely summarized the contents of the easements. He did not attempt to state a conclusion as to the legal effect of the terms. His testimony and charts are analogous to that of an accountant testifying to the content of voluminous accounting papers. Spradlin v. Rosebud Feed & Grain Co., 294 S.W.2d 301 (Tex.Civ.App. —Waco 1956, writ ref'd n. r. e.). Under this fact situation, it is our opinion that such evidence is admissible, and in any event, reversible error has not been shown since there have been no allegations or showing that Sanders has misinterpreted the terms of the easements. Rule 434, Texas Rules of Civil Procedure.

■ Appellants' points of error nos. 8–13, relate, in general, to matters concerning pleadings, evidence, instructions and argument as to "future damages." Appellants' points nos. 8 and 9 pertain to allowance of appellee's trial amendment as to future damages and the court's overruling of appellants' exception thereto. Since it has been determined that the cause should be remanded for reasons previously stated, we do not perceive that the question regarding the allowance of the trial amendment is likely to arise on the retrial of the case, and thus a detailed discussion of such points is not necessary. We point out, however, that under the holding of White v. Natural Gas Pipeline Company of America, 444 S.W.2d 298 (Tex.1969) a statement or pleading in condemnation promising to pay for future damages is subject to special exception.

■ Appellants' tenth point of error pertains to the refusal of the trial court to allow appellants to argue to the jury that all damages, past, present and future, must be awarded by the jury in this suit. It is fundamental that if certain facts are admitted into evidence and constitute an element of the case, then they can be argued to the jury. The landowner has the right to recover in one action all damages resulting from the condemnation. White v. Natural Gas Pipeline Company of America, supra. See, also, cases collated at 22 Tex. Jur.2d Eminent Domain § 166 (1961). Therefore, if such facts are introduced into evidence involving past, present, or future damages, then they may be argued to the jury. However, in the trial below, no evidence of future damages was ever admitted and we find no error in the court's disallowing argument as to future damages.

We here note that in appellants' twelfth point of error, it is urged that the trial court erred in refusing to submit appellants' requested instructions to the jury concerning future damages. The requested instructions were:

"You are instructed that the condemnees are entitled to recover in this one action the whole amount of the damages that they have incurred or will incur in the future because of the taking of the condemnor."

In view of our holding with respect to the matters previously considered, we do not deem it necessary to discuss either appellants' eleventh point of error, which concerns the reopening of the case for the purpose of proving future damages, the twelfth point relative to jury instructions as to future damages, or their thirteenth point of error pertaining to the judgment which fails to define appellee's duties and obligations regarding payment for future damages. In a subsequent trial of the case, the matter of future damages should be considered on the basis of the admissible evidence presented in the determination

of the total damages that may affect the value of the land taken as well as the remainder of the tract, and the jury should be appropriately instructed in accordance with the evidence submitted and the issues raised. As stated in White v. Natural Gas Pipeline Company of America, supra:

"The landowner is entitled to compensation in money at the time of taking for the difference in market value of the easement strip and remainder before and after taking. The landowner is not burdened with the delay and expense of future lawsuits." (citing authorities)

■ Appellants' fourteenth point of error pertains to the trial court's awarding of interest to appellee on the amount by which the commissioners' award exceeded the verdict of the jury from the date said sum was withdrawn by appellants. The case of Davidson v. County of Harris, 454 S.W.2d 830 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n. r. e.) sets forth the following rule:

" . . . interest on the excess of the special commissioners' award over the jury's finding should not be calculated from the date of the deposit of the award but should be limited to the date of the judgment."

It is our opinion that interest on the excess should be limited to the date of judgment, and that the trial court erred in assessing interest from the date of the withdrawal. We sustain appellants' fourteenth point, and in any future proceeding, the interest should be determined in accordance with the above stated rule.

■ Appellants' final point of error pertains to the assessment of costs. They contend that the trial court's assessment against appellants was in violation of Vernon's Ann.Civ.St., art. 3267, which provides:

"The costs of the proceedings before the commissioners and in the court shall be determined as follows, to-wit: If the commissioners shall award greater damages than the plaintiff offered to pay before the proceedings commenced, or if objections are filed to the decision in the county court under the provisions of this title, and the judgment of the court is for a greater sum than the amount awarded by the commissioners, then the plaintiff shall pay all costs; but if the amount awarded by the commissioners as damages or the judgment of the county court shall be for the same or less amount of damages than the amount offered before proceedings were commenced, then the costs shall be paid by the owner of the property."

It has been stipulated by both parties that the maximum offer for the easement made by MAPCO was $15.00 per rod. The commissioners' awards were approximately $40 per rod on the Buzzard tract and approximately $55 per rod on the Lynn tract. The final judgment of the trial court awarded $15.34 per rod on the Buzzard tract and $19.21 per rod on the Lynn tract. The above quoted statute governing the awarding of costs in condemnation cases authorizes the assessment of costs against the property owner *only* when the amount awarded by the commissioners as damages or the judgment of the county court shall be for "the same or less" than the amount offered before the proceedings were commenced. Under the circumstances of this case, the amount of damages awarded by the commissioners and the judgment of the county court were each more (not the same or less) than the amount offered by the condemnor before the proceedings were commenced. Thus, the assessment of costs against the landowners is not authorized. Appellants' fifteenth point of error regarding the assessment of costs against the condemnees is sustained.

For the reasons above stated, the judgment of the trial court is reversed and the cause remanded for another trial. Appellee's motion for rehearing is overruled.