**DELHI GAS PIPELINE COMPANY,**
**Appellant,**

v.

**E. C. HEDDIN et ux., Appellees.**

**No. 753.**

Court of Civil Appeals of Texas,
Tyler.

April 25, 1974.

Rehearing Denied May 30, 1974.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for appellant.

Wynne & Wynne, Wills Point, Elliott & Bass, Clyde Elliott, Jr., Canton, for appellees.

DUNAGAN, Chief Justice.

This is a condemnation case. This cause bears the same style as another decision recently announced by this court, bearing Docket No. 736, and reported in 508 S.W. 2d 417. Both are condemnation cases but pertain to different tracts of land. This is one of a number of appeals brought about by the condemnation of a strip of land through Van Zandt County, Texas, for the purpose of laying a gas transmission pipeline. Delhi Gas Pipeline Company, appellant-condemnor, brought this suit against E. C. Heddin and wife, Lillie Belle Heddin, appellees, to determine the amount of loss, if any, in market value of the Heddin property, suffered after a 1.5 acre easement from their land was taken to construct a gas transmission pipeline. The Heddins own an almost square-shaped 80 acre tract of land in Van Zandt County, Texas. The easement runs generally north to south through the western edge of the property. The land actually condemned for purposes of the easement is 50 feet wide and 1,644 feet long, leaving a remainder of 78.5 acres.

The right-of-way easement houses a pipeline 12¾ inches in outside diameter, buried thirty-six inches under the ground. Admittedly, the gas transported contains approximately 3.2 percent hydrogen sulfide, a lethal poison. It is the dangerous nature of the contents of this line and the fear created by its presence on the land which generate the entire controversy of this appeal.

In answer to special issues the jury found: (1) the per acre value of the property actually taken for the easement before the taking was $400.00; (2) the per acre value of the property actually taken for the easement after the taking was $50.00; (3) the per acre value of the remainder before the taking was $400.00; and (4) the per acre value of the remainder after the taking was $275.00. Upon this verdict— that the 1.5 acre easement was damaged $350.00 per acre and the 78.5 acre remainder was damaged $125.00 per acre, the trial court rendered judgment for appellees in the amount of $10,287.50, less deposits. Appellant alleges the large diminution in market value stems from an error on the part of the trial court in allowing in evidence certain inflammatory and inadmissible testimony which improperly influenced the jury. We reverse the trial court and remand the cause for a new trial.

We have previously decided two cases involving this same pipeline through property located in the same general area of the property in question. Although the trial strategy seems to have remained constant during the three trials, basic differences have arisen which dictate independent outcomes.

Appellant, through its Point of Error No. 2, asserts that it was error on the part of the trial judge to permit witness Lahecka to testify to a rupture of a Pan American pipeline in 1971, over its objection "that such rupture could have no relevance to the market value of the property involved in the present case as of the date of taking, December 8, 1970." We feel this point to be controlling. This point was not presented to us in either of the other two cases appealed to this court by Delhi Gas Pipeline Company.

During the course of this trial, three of the witnesses for the appellees, Robinson, Lahecka and Parkinson, were permitted to give testimony concerning damage caused by a rupture in a Pan American pipeline located approximately two miles away near Edgewood, Texas. This evidence was offered for the purpose of showing how the market value of the Heddin property had been diminished as a result of fear in the minds of the buying public created by the Pan American rupture. Appellees' own witnesses testified the Edgewood rupture occurred in July of 1971, some eight months after condemnation of the Heddin property easement. When the witness, Lahecka, was attempting to testify about the Pan American rupture, the following took place:

"MR. HARTMAN: Now, your Honor, I am going to make the objection that it being 1971, it is immaterial to any issue in this lawsuit because this Court has before it only the questions of the value of the property involved here immediately before and immediately after the date of December 8, 1970. And 1971 is not either immediately before or immediately after the date of December 8, 1970. And the Court has already ruled here that the only issue here on which this testimony can be received is on the question of market value. And the only question of market value before this Court is immediately before annd immediately after December 8, 1970.

"For that reason this testimony is completely irrelevant to any issue before the Court and jury, and we object to it for that further reason.

MR. ELLIOTT: If the Court please, we also have sales of property which were used to determine the market·value which ranged from '69 to '72, so obviously the word immediately before and immediately after doesn't mean the minute before and the minute after. For instance Delhi pipeline wasn't even installed until February or March of 1971, so if we are going to use December 8 as the determining factor, we couldn't possibly know what the effect would be until the line was installed. So I am suggesting to the Court that the word immediately doesn't mean the minute before and the minute after but a reasonable time before and a reasonable time afterwards. We are talking about the effect of this pipeline on this property from now on.

"THE COURT: You may proceed. Objection overruled.

"MR. HARTMAN: Your Honor, may I make the further point by way of my objection, the question here before the Court is what a willing buyer would be willing to pay and what a willing seller would be willing to sell for regarding the date of December 8, 1970.

"Now if the purpose of this testimony is to show how this Pan American line experience affects the market, then I submit to you that something that happened in 1971 could have had no effect at all on a willing buyer or willing seller around December 8, 1970, when neither of them knew about it or had heard about it because it hadn't taken place. And that's the objection we are making.

"The Court having ruled, I would like to have all of the objections which we have made carried as a running bill of exceptions.

"THE COURT: Granted, the running bill of exceptions."

■ The compensation for land taken by eminent domain is measured by the market value of the land at the time of the taking. Vernon's Ann.Tex.Const., Art. 1, sec. 17; Vernon's Ann.Civ.St., Art. 3268; Fuller v. State, 461 S.W.2d 595 (Tex.Sup.1970); City of Fort Worth v. Corbin, 504 S.W.2d 828 (Tex.Sup.1974). The record reveals that the requirements of Article 3268, Vernon's Ann.Civ.St. were satisfied and the order of possession

entered on December 8, 1970. Therefore, the Pan American pipeline ruptured after the date upon which the condemnor lawfully took possession of the easement. This being so, an event which occurred approximately eight months later could not affect the market value of the Heddin property determined as of the 8th day of December, 1970. The trial court erred in overruling the objection of the appellant.

The damaging nature of testimony concerning the Pan American pipeline rupture is clearly evident from the record as a whole. When another of appellees' witnesses, Parkinson, testified over the same objection, he related how the Reid family, occupants of a nearby house, smelled an odor during the night, hurriedly left home, leaving their pets behind, and when they returned, they found two dogs and a cat dead, ten head of cattle dead in the adjoining pasture, and their home ruined. To further illustrate the destructive nature of this pipeline rupture, the same witness introduced into evidence pictures of the animals killed by the poisonous gas. Due to the impressive character of the testimony dealing with the Pan American pipeline rupture, we feel it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

■ We are aware of the fact that another witness for the appellees, Robinson, testified about the Pan American rupture prior to Lahecka and Parkinson without this same objection being raised. His testimony was similar to the witnesses which followed, covering most of the damaging aspects of the eruption. This testimony was objected to on the ground that it was hearsay, which objection was overruled. Had no objection been made to Robinson's testimony, then we would have been constrained to rule that any error committed by the trial court in allowing into evidence the facts of the Pan American rupture to be harmless. The rule is well established in this State that the trial court's admission of evidence over objection is deemed to be harmless when similar evidence to the same effect is offered and received without objection. Rowe v. Liles, 226 S. W.2d 253 (Tex.Civ.App., Waco, 1950, writ ref.); 23 Tex.Jur.2d, sec. 208, p. 320. We feel the foregoing rule of law to be inapplicable. The testimony of Robinson pertaining to the pipeline rupture was properly objected to on the grounds of hearsay. Had the trial court made the correct ruling, the evidence would not have been admitted. Under these facts it cannot be said that similar evidence was offered and received without objection.

Judgment of the trial court is reversed and the cause is remanded.