**E. C. HEDDIN et ux., Petitioners,**

v.

**DELHI GAS PIPELINE COMPANY,**
Respondent.

No. B–4760.

Supreme Court of Texas.

May 14, 1975.

Elliott & Bass, Clyde Elliott, Jr., Canton, Wynne & Wynne, Gordon R. Wynne, Wills Point, for petitioners.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for respondent.

SAM D. JOHNSON, Justice.

Delhi Gas Pipeline Company brought this suit against E. C. Heddin and wife, Lillie Belle Heddin, to condemn a portion of their land for the purpose of laying a gas transmission pipeline. At trial the Heddins (landowners) recovered substantial damages for injury to their property by reason of the condemnation. Delhi Gas appealed; the court of civil appeals reversed and remanded the case for a new trial. 509 S.W.2d 954. We affirm the judgment of the court of civil appeals.

The landowners' property is an almost square-shaped, eighty-acre tract of land in Van Zandt County, Texas. The easement runs generally north to south through the western edge of the property; it is fifty feet wide, 1,644 feet long and totals approximately 1.5 acres. The gas pipeline is 12¾ inches in outside diameter and is buried thirty-six inches under the ground. This pipeline carries a gas which contains approximately 3.2 percent hydrogen sulfide, a lethal poison, at 1,180 pounds of pressure per square inch. As stated by the court of civil appeals, "[i]t is the dangerous nature of the contents of this line and the fear created by its presence on the land which generate the entire controversy of this appeal." 509 S.W.2d 954 at 955.

The landowners sought to prove that the market value of their property was decreased substantially by reason of fear in the minds of the buying public of the possible escape of this type of gas from gas transmission pipelines. Though the date of taking was December 8, 1970, the trial court, over objection, permitted the introduction of evidence of damages caused by a rupture in another gas transmission pipeline on July 5, 1971, almost eight months after the date of taking. This rupture occurred approximately two miles away in a gas transmission pipeline owned by Pan American.

In answer to special issues the jury found: (1) before the taking the per-acre value of the 1.5 acres actually taken for the easement was $400; (2) after the taking the per-acre value of the 1.5 acres actually taken for the easement was $50; (3) before the taking the per-acre value of the 78.5-acre remainder was $400; and (4) after the taking the per-acre value of the 78.5-acre remainder was $275. Upon this

verdict the trial court rendered judgment for the landowners in the amount of $10,287.50, less deposits.

On appeal Delhi alleged that the large diminution found by the jury in the market value of the landowners' remainder stemmed from error on the part of the trial court in admitting evidence of the Pan American rupture. The court of civil appeals agreed with Delhi's contention that evidence of the Pan American rupture was irrelevant to the question of the market value of the landowners' property on the date of taking. The basis for that court's decision was that "an event which occurred approximately eight months later could not affect the market value of the Heddin property determined as of the 8th day of December, 1970." 509 S.W.2d 954 at 957. The court of civil appeals held that admission of evidence of the Pan American rupture was reversible error and remanded the cause for a new trial.

For reasons which will hereinafter appear we affirm that court's judgment of reversal and remand to the trial court. Since this case must be retried, it is incumbent upon this court, as a guideline for trying this and other similar cases, to set out a definitive statement of its position regarding the relevance of evidence of ruptures occurring subsequent to the date of taking.

■ It is clear that compensation for land taken by eminent domain is measured by the market value of the land at the time of the taking. Tex.Const. art. 1, § 17, Vernon's Ann.St.; Vernon's Tex.Rev.Civ. Stat.Ann. art. 3268; City of Fort Worth v. Corbin, 504 S.W.2d 828 (Tex.1974); Fuller v. State, 461 S.W.2d 595 (Tex.1970). It is equally clear that *fear* in the minds of the buying public on the date of taking is relevant to the proof of damages when the following elements appear:

1. That there is a basis in reason or experience for the fear;

2. That such fear enters into the calculations of persons who deal in the buying and selling of similar property; and

3. Depreciation of market value because of the existence of such fear.

Buzzard v. Mapco, Inc., 499 S.W.2d 352 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); Delhi Gas Pipeline Company v. Reid, 488 S.W.2d 612 (Tex.Civ.App.— Waco 1972, writ ref'd n. r. e.); Gulledge v. Texas Gas Transmission Corp., 256 S. W.2d 349 (Ky.1952). *See* Delhi Gas Pipeline Company v. Mangum, 507 S.W.2d 631 (Tex.Civ.App.—Tyler 1974, no writ); 4A Nichols, Eminent Domain § 14.241(1) (1971); Annot., 38 A.L.R.2d 788, 801.

■ To establish that there is a basis in reason or experience for the fear, it is incumbent upon the landowners to show either an *actual danger* forming the basis of such fear or that the fear is reasonable, whether or not based upon actual experience. Reduction in market value due to fear of an unfounded danger is not recoverable. Northeastern Gas Transmission Co. v. Lapham, 19 Conn.Sup. 468, 117 A.2d 441 (1955); East St. Louis Light & Power Co. v. Cohen, 333 Ill. 218, 164 N.E. 182 (1928); Yagel v. Kansas Gas & Electric Co., 131 Kan. 267, 291 P. 768 (1930); Kentucky Hydro Electric Co. v. Woodard, 216 Ky. 618, 287 S.W. 985 (1926); Onorato Brothers v. Massachusetts Turnpike Auth., 336 Mass. 54, 142 N.E.2d 389 (1957); Johnson v. Airport Authority of City of Omaha, 173 Neb. 801, 115 N.W.2d 426 (1962). *See* United States v. Borth, 266 F.2d 521 (6th Cir. 1959); 4A Nichols, *supra,* §§ 14.241 et seq. This rule is designed to exclude consideration only of those few situations in which the danger underlying the fear finds its basis in neither reason nor experience but is predicated rather on fancy, delusion or imagination.

■ Proof of specific instances in which similar pipelines have developed

ruptures under similar circumstances is directly relevant to the question of whether there is an actual danger underlying assertions that fear adversely affected market value. Evidence of specific similar ruptures occurring prior to the date of taking would of course be admissible to substantiate allegations that fear of an actual danger from the pipeline reduced market value. The question remains, however, whether evidence of a rupture subsequent to the date of taking is wholly precluded —and precluded solely because it occurred after the date of taking.

■ The general rule that compensation for land taken by eminent domain is measured by its market value at the time of taking would appear to require exclusion of evidence of all ruptures occurring after the date of taking. A rupture occurring subsequent to the date of taking could not have had an effect on market value as of the date of taking. However, we believe evidence of a subsequent rupture is admissible under certain limited circumstances and for a properly limited purpose. That is, when the condemnor asserts the pipeline is free from danger, or when the condemnor otherwise takes the position that fear of a danger from the pipeline is not a factor affecting market value, the landowner may, in rebuttal, introduce evidence of specific ruptures in the same or a closely similar pipeline.

■ In the instant case evidence of the subsequent Pan American rupture was offered by the landowners and admitted by the trial court generally as a factor affecting market value before condemnor's appraisal witnesses testified on the subject. More specifically, the landowners' evidence of the subsequent rupture of the similar pipeline was not in rebuttal to the posture of the condemnor that the proposed pipeline was not dangerous. At the time the landowners offered evidence of the subsequent rupture, Delhi objected on the grounds that it occurred after the date of taking and could have no relevance to the market value of the landowners' property as of that date. Under these circumstances the court of civil appeals properly held the evidence was inadmissible.[1]

■ Moreover, the damaging nature of the testimony concerning the Pan American rupture is clearly evident from the record. Three witnesses were called by the landowners to establish the circumstances surrounding the Pan American rupture. These witnesses were allowed to give detailed accounts of the damage from the rupture and of the fact that it had killed three pets and ten head of cattle belonging to the landowner on whose property the pipeline was buried. Due to the impressive nature of the improperly admitted testimony concerning the Pan American rupture, the court of civil appeals properly reversed the judgment of the trial court and remanded the case for new trial under Rule 434, Texas Rules of Civil Procedure.

■ Even if the evidence of the Pan American rupture had been offered for the limited purpose of rebuttal, which it was not, we would still be compelled under this record to affirm the court of civil appeals. This conclusion is inescapable when the method used to illustrate the damage caused by the Pan American rupture is examined. Over strenuous objections, a number of photographs of the carcasses of the cattle and the pets belonging to the landowner in the Pan American case were introduced. Although photographic reproductions can be beneficial to all parties in the trial of a lawsuit, those that are merely calculated to arouse the sympathy, prejudice or passion of the jury and do not serve to illustrate disputed issues or aid the jury in its understanding of the case

1. We expressly reserve any holding as to whether liability for damages incurred from a rupture in the pipeline located on the land involved in the condemnation should be adjudicated in the condemnation proceeding. *See* Glade v. Dietert, 156 Tex. 382, 295 S.W.2d 642 (1956).

should not be admitted. Southern Transp. Co. v. Adams, 141 S.W.2d 739 (Tex.Civ. App.—Beaumont 1940, writ dism'd jdgmt cor.); Ryan v. United Parcel Service, 205 F.2d 362 (2d Cir. 1953); Haddad v. Kuriger, 437 S.W.2d 524 (Ky.1968); Armentrout v. Hughes, 247 N.C. 631, 101 S.E.2d 793 (1958); 29 Am.Jur.2d Evidence § 787. See Annot., 73 A.L.R.2d 769, 841. The photographs of the dead animals introduced on behalf of the landowners here had no relevance to the disputed issues; they were not calculated to aid the jury in its understanding of the case. Indeed, it must be concluded that they were shown not for the purpose of establishing the dangerousness of the pipeline but rather for their shock value—in the words of counsel for the landowners, "for further knowledge of what he [the landowner in the Pan American case] really saw out there." These photographs must be construed as an attempt to appeal to the prejudice and passion of the jury. Admission of these highly inflammatory and irrelevant photographs was such error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

The judgment of the court of civil appeals is affirmed.

Concurring opinion by REAVLEY, J., in which WALKER, J., joins.

REAVLEY, Justice (concurring).

The Court of Civil Appeals has accurately disposed of the appeal. 509 S.W.2d 954. It may be that we will someday be faced with a case where we will not require the condemnor to pay for all of the actual consequences of the taking and the facility to be constructed—the reason for that limitation on condemnee's recovery being that the fear of the facility is a product of wild fancy. See 1 Orgel, Valuation Under Eminent Domain § 61 [1953]. However, imaginary danger is certainly not in the present case. The parties might debate the *extent* of the danger, though they should not be allowed to do so.

But no one can find any reason to argue that fear of a high pressure gas pipeline is based on sheer ignorance or is a reaction to an imaginary danger.

Condemnor's expert witnesses testified that the market value of the remainder was not diminished by the taking. The majority opinion apparently regards the offer of this testimony by the condemnor as taking "the position that fear of a danger from the pipeline is not a factor affecting market value." The door is then opened to try out questions of the similarity of pipelines and to make proof of subsequent disasters. I submit that the trial thus becomes needlessly more complicated and confusing. The purpose of the introduction of evidence of the subsequent event may be limited, by condemnor's offer and by the court's instruction to the jury, but the jurors may have great difficulty in confining their thoughts accordingly. Since that proof could be highly prejudicial to the condemnor, and since there is no issue that requires its consideration for any purpose necessary to the case of the condemnee, evidence of the subsequent disaster should be excluded.

WALKER, J., joins in this concurring opinion.