**DELHI GAS PIPELINE CORPORATION,**
Appellant,

v.

**Nat GIBBS, et ux, et al, Appellees.**

**No. 1542.**

Court of Appeals of Texas,
Tyler.

Nov. 24, 1982.

Rehearing Denied Dec. 30, 1982.

˚ Raymond Johnson, Sulphur Springs, Ronald H. Williamson, Dallas, for appellant.

Coy Johnson, Sulphur Springs, Robert L. Kelsoe, G.H. Kelsoe, Dallas, J.R. Sorrell, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellees.

SUMMERS, Chief Justice.

This appeal comes to us from an eminent domain proceeding brought by Delhi Gas Pipeline Company, appellant-condemnor, against Nat Gibbs, wife Blanche Gibbs, and Nat Paul Gibbs, wife Shirley Gibbs and First State Bank of Corpus Christi, appellees in the District Court of Hopkins County, Texas. The First State Bank of Corpus Christi was joined as a defendant because of a lien in its favor against the land involved in the case, but did not participate in the proceedings in any manner. Appellant has condemned a gas pipeline easement across a 1,779 acre tract owned by appellees. The easement consists of approximately 15.381 acres of land, is 50 feet wide and runs a distance of over 13,000 feet (over two and a half miles long) from the north to the south end of the ranch. The Gibbs maintain a five bedroom brick and veneer home on the tract located about 2,900 feet east of the pipeline easement. Several farm buildings are also located on the tract. The tract is comprised of approximately one-half meadow and one-half timber land.

The easement houses a pipeline eight and five-eighths inches in outside diameter, buried thirty-six inches under the ground. Admittedly, the gas transported through the line contains approximately 2.8 percent hydrogen sulfide. It is the dangerous nature of this line and the fear created by its presence on the land which generate the entire controversy of this appeal.

The landowners sought to prove that the market value of their property was substantially decreased by reason of fear in the minds of the buying public of the possible escape of toxic gas from the pipeline. The date of the taking was May 18, 1978, and

the trial court, over objection, permitted the introduction of evidence of damages caused by a rupture which occurred near Meridian, Mississippi, in 1974, in a gas transmission pipeline also owned by Delhi.

In answer to special issues, the jury found: (1) the per acre value of the property taken for the 15.381 acre easement before the taking was $450.00; (2) the per acre value of the property actually taken for the easement after the taking was $50.00; (3) the per acre value of the remaining 1763.619 acres before the taking was $450.00; and (4) the per acre value of the remainder after the taking was $300.00. Upon this verdict—that the 15.381 acre easement was damaged $400.00 per acre and the 1763.619 acre remainder was damaged $150.00 per acre, the trial court rendered judgment for appellees in the sum of $271,079.78 less deposits of $21,165.00 or a balance of $249,914.28, together with interest on the sum of $249,914.28 at the rate of nine percent (9%) per annum from May 18, 1978, until said sum is paid. The crux of the controversy is the amount of loss in market value of the condemned land and the amount of loss, if any, in market value suffered to the remainder of the land. Delhi contends the jury found the difference in the market value after installation of the pipeline to be excessive because the trial court erroneously allowed inadmissible and prejudicial evidence to be presented during the trial.

We reverse and remand.

Appellant asserts thirteen points of error. We shall address the first two points which are dispositive of this appeal. In these points appellant Delhi asserts that the trial court erred in admitting testimony and evidence regarding a pipeline rupture and explosion that occurred in Mississippi in 1974. Delhi complains, now as at trial, that a proper predicate was not laid to show that the Mississippi pipeline was the same as or sufficiently similar to the Hopkins County pipeline (the subject of this dispute) to warrant comparison of the two.

█ The burden of proving harmful error rests on the appellant. *Delhi Gas Pipeline Company v. Heddin,* 508 S.W.2d 417 (Tex.Civ.App.—Tyler 1974, no writ). The question of whether error, if any, probably caused rendition of an improper judgment must be determined by the appellate court in the exercise of its sound discretion from a review of the record as a whole, including the state of the evidence. Rule 434, Tex.R.Civ.P.; *Delhi Gas Pipeline Company v. Heddin, supra* at 421.

Fear of a pipeline as a factor relevant to proof of damages in a condemnation case is defined by the Texas Supreme Court in *Heddin v. Delhi Gas Pipeline Co.,* 522 S.W.2d 886, 888 (1975), where the court stated:

> It is equally clear that fear in the minds of the buying public on the date of taking is relevant to the proof of damages when the following elements appear:
>
> 1. That there is a basis in reason or experience for the fear;
>
> 2. That such fear enters into the calculations of persons who deal in the buying and selling of similar property; and
>
> 3. Depreciation of market value because of the existence of such fear.

*Buzzard v. Mapco, Inc.,* 499 S.W.2d 352 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.); *Delhi Gas Pipeline Company v. Reid,* 488 S.W.2d 612 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); *Gulledge v. Texas Gas Transmission Corp.,* 256 S.W.2d 349 (Ky. 1952). *See Delhi Gas Pipeline Company v. Mangum,* 507 S.W.2d 631 (Tex.Civ.App.—Tyler 1974, no writ); 4A Nichols, Eminent Domain § 14.241(1) (1971); Annot., 38 A.L. R.2d 788, 801. In *Heddin,* the court further held that proof of specific instances in which *similar* pipelines have developed ruptures under *similar* circumstances is directly relevant.

█ We adhere to the standard as set forth by this court in *Delhi Gas Pipeline Company v. Mangum, supra,* in which the court held that where the two pipelines being compared are generally similar in their important or essential characteristics a comparison can be made. The court, how-

ever, further held that proof of *some similarity* is not sufficient to allow the introduction of irrelevant and prejudicial testimony of what happened on another pipeline.

Examination of the record reveals that appellant's witness, Pete Dickens an employee of Delhi, when examined by appellee as an adverse witness, gave testimony over appellant's objection showing the similarities and differences between the two pipelines. Also, appellant objected to the admission into evidence of the report from the National Transportation Safety Board (appellee's Exhibit No. 12) regarding the 1974 explosion. A partial list of the factors considered on both lines showed *some similarity,* namely, the pipelines were similar or the same as to the type of pipe used, the wall thickness, the wrapping of the pipeline and the hydrogen sulfide transported through the lines. However, the evidence shows many material dissimilarities between the Mississippi pipeline and the Hopkins County pipeline. Several of the primary dissimilarities include the following: (1) the Hopkins County pipeline is equipped with a continuous inhibitor process, the Mississippi system was not; (2) the Hopkins County pipeline uses a dehydration process, there is no compression and there is a low liquid content in the gas. The Mississippi system had no dehydration process, compression existed and had a high liquid content in the gas; (3) The Hopkins County pipeline has a high velocity characteristic which allowed the "sweeping" of liquids. The Mississippi pipeline had low velocity; (4) the Hopkins County pipeline uses low hydrogen welding lines which evidence showed are less susceptible to corrosion. The Mississippi system used standard welding lines; (5) the Hopkins County pipeline had 100% of its welded joints x-rayed, the Mississippi system had only approximately 20% of its welded joints x-rayed; (6) the Hopkins County pipeline as a safety precaution was constructed with the longitudinal seam on the top thereby preventing corrosion from liquids laying on the weld. The Mississippi system was constructed with the longitudinal seam on the bottom of the line; (7) the Hopkins County pipeline has cathodic protection and a twenty-four hour computer monitoring system. The Mississippi system had no cathodic protection and was daily monitored only by manual check; (8) the Hopkins County pipeline has hydrogen probes to detect corrosion before same might affect the pipeline, automatic block valves which in addition to the flow rates and pressures are continuously monitored by a twenty-four hour control center in Tyler. The Mississippi system had no hydrogen probes, no monitoring of the flow and pressure rates and only manually operated block valves; (9) finally, the Hopkins County line has a written safety program, the Mississippi line did not. Furthermore, the record reflected several other material dissimilarities between the two lines. It is apparent that the Mississippi system was devoid of the advances incorporated into the construction and the operation of the Hopkins County pipeline. Moreover, from the evidence adduced at trial we are unable to conclude that the Mississippi explosion, being so remote in time and location, was a factor in the Hopkins County market place.

 Where the proof, as here, fails to show that the two pipelines are generally similar in their essential characteristics, then proof of an explosion on one line offers no reasonable basis for depreciating the market value of the land housing the dissimilar line. The admission by the trial court in the instant case of evidence of a rupture in the Mississippi pipeline was reversible error because that line was not shown to have been generally similar in characteristics to the Hopkins County line.

Appellant's first and second points are sustained.

The judgment of the trial court is reversed and the cause is remanded.