**TEXAS ELECTRIC SERVICE COMPANY, Appellant,**

v.

**Burlyn H. NELON et ux., Appellees.**

**No. 17775.**

Court of Civil Appeals of Texas, Fort Worth.

Jan. 14, 1977.

Rehearing Denied March 4, 1977.

Cantey, Hanger, Gooch, Munn & Collins, Jack C. Wessler and S. G. Johndroe, III, Fort Worth, for appellant.

Crumley, Murphy & Shrull, William M. Murphy, Fort Worth, for appellees.

OPINION

PER CURIAM.

This case presents an appeal from a condemnation award entered against a public utility in a proceeding resulting from the construction of Comanche Peak generating plant, the first nuclear-powered generating plant in Texas. Appellant, Texas Electric Service Company, asserts excessiveness in the jury's award for damages to the market value of the remainder of the owner's land as a result of the condemnation of the strip of land for railroad easement in that it was improperly influenced by testimony of fear of purported nuclear danger.

The appeal is based upon "no evidence" and "insufficient evidence" points relating to the jury's findings, the admissibility of evidence of fear of accidents or sabotage during the transportation of nuclear waste, an assertion that the jury award was grossly excessive, and other evidentiary matters.

We affirm.

Appellant (to be referred to as TESCO) brought a statutory condemnation proceeding against Mr. and Mrs. Burlyn H. Nelon. These condemnees objected to the special commissioners' award of $22,000.00. Subsequently a jury trial was held in the 29th District Court of Hood County, Texas. Judgment was rendered upon the jury verdict.

On June 3, 1975, TESCO acquired the easement of 7.687 acres as a right-of-way strip for a railroad spur through the Nelons' 358-acre farm in Hood County. A portion of the ten-mile railroad spur crosses the property about 3½ miles from the Comanche Peak generating plant on Squaw Creek

Reservoir. It connects with the main Santa Fe Railroad line at Tolar, Texas. The farm is currently leased for the production of peanuts. No one lives on the property, although it is used as a weekend retreat.

Condemnees presented evidence at trial that one of the purposes of the railroad spur line was to carry nuclear waste away from the Comanche Peak site. It is undisputed that a portion of that waste will be plutonium, a highly dangerous radioactive substance which must be carefully contained.

TESCO does not quarrel with the $6,149.60 awarded the condemnees for the 7.687-acre easement. The controversy relates solely to the amount of damages to the remainder resulting from construction of the railroad and its intended use.

Jury findings in answer to Special Issues Nos. 3 and 4 were that the reasonable market value of the 350.413-acre remainder immediately before the taking on June 3, 1975, was $280,330.40, and immediately after the taking, $175,206.50.

TESCO in its first four points of error asserts that there is "no evidence" and "insufficient evidence" to support these jury findings of market value. In Point 5 TESCO complains of the admission of the opinion testimony of condemnees' value witness, Vernon Thomas, in regard to the alleged reduction in market value of the remainder because of the fear of purported nuclear danger. By its sixth point TESCO asks this court for a remittitur.

In essence, TESCO's position under its first six points is (1) that condemnees' value testimony is not supported by market data; (2) that condemnees did not establish the nature of the damage to the remainder, its effects upon the various portions of the tract, and the relationship of the damage to market value as required by *Tennessee Gas & Transmission Co. v. Zirjacks,* 244 S.W.2d 837 (Tex.Civ.App., San Antonio, 1951, writ dism'd); and (3) that condemnees' evidence of fear did not meet the test of *Heddin v. Delhi Gas Pipeline Company,* 522 S.W.2d 886 (Tex.Sup., 1975) because there was no proof that the alleged fear was based upon actual experience.

■ In considering the "no evidence" points we must view the evidence in the light most favorable to the jury's findings and disregard all evidence to the contrary. If there is any evidence of probative force to support the jury's findings, we are bound by those findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ In considering whether the evidence is "insufficient" to support the jury's findings, we must review all the evidence. The case should be remanded for new trial only if the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong or manifestly unjust. *In re King's Estate,* supra.

The jury's finding of decreased value suggests that it did not consider fear of nuclear danger a factor. The findings of value before and after taking show a decrease of $105,123.90. This figure corresponds mathematically to the $300-per-acre decrease (from $800 to $500) in the value of the 350.413-acre remainder which Thomas, condemnees' value witness, testified to be the result of the construction of the railroad, without any consideration of the nature of its intended freight.

We may not assume that the jury did not consider the fear factor, however. "The jury is at liberty to reach its conclusion by blending all of the evidence admitted before it, aided by its members' own experience and knowledge of the subject of inquiry. Jurors are not compelled to credit all the testimony of any witness or to reject it all. Opinion evidence is not conclusive. A jury may consider and accept or reject opinions or it may find its own opinion from evidence and by utilizing its own experience in matters of common knowledge." *Coastal Industrial Water Authority v. Reynolds,* 503 S.W.2d 593, 601 (Tex.Civ.App., Houston, 1st Dist., 1973, writ ref'd n. r. e.), citing *Coxson v. Atlantic Life Ins. Co.,* 142 Tex. 544, 179 S.W.2d 943 (1944).

We first consider the evidence concerning the land value immediately before the tak-

ing and the damage to the remainder allegedly resulting from the taking for the railroad, apart from a consideration of the evidence of fear and its effect upon the value of the remainder.

## VALUE OF REMAINDER IMMEDIATELY BEFORE TAKING

■ Nelon testified that he was in the commercial and residential construction business and has been buying land for development since 1959. In his opinion the value of the tract was $1000 per acre at the time of taking, June 3, 1975.

Condemnees' expert value witness was real estate appraiser Vernon Thomas. He testified that the property's highest and best use was for small-tract development and for small-scale food and livestock production. It was his opinion that the remainder was worth $800 per acre immediately before the taking. Thomas based his opinion upon the following sales of property which he considered comparable: (1) Williams to Hyde: a 1974 sale of 30.25 acres at $1500 per acre; (2) Ballard to Pearson: a 1973 sale of 245.755 acres at $1000 per acre; (3) Johnson to Ross: a 1974 sale of 29.2 acres at $800 per acre; (4) Manning to McKenzie: a 1974 sale of 38.5 acres at $825 per acre.

TESCO's expert value witness, real estate appraiser James W. Daniels, testified that the remainder was worth only $700 per acre before taking. He based his opinion upon the following sales which he considered comparable: (1) Willy to Decker: a 1974 sale of 80 acres at $900 per acre; (2) Davis to Williams: a 1973 sale of 157 acres at $557 per acre; (3) Couch to Ragle: a 1973 sale of 206 acres at $525 per acre; (4) Moore to Ramsey: a 1974 sale of 89.23 acres at $644.44 per acre.

The weight of the opinion evidence presented was a matter for the jury's determination. There was ample evidence to support the jury's finding of $800 per acre as the value of the remainder before taking. We overrule TESCO's points 1 and 3.

## VALUE OF REMAINDER IMMEDIATELY AFTER TAKING

■ Condemnees' witness Thomas testified over objection to his opinion that there was greater diminishment in the value of small tracts near a railroad than in the value of those farther away. As an example, he cited: (1) Stroud Creek Estates to Schemake: a 1973 sale of 11 acres (3 lots) far from the railroad at $1000 per acre; (2) Stroud Creek Estates to Lucker: a 1973 sale of 42 acres (11 lots) abutting the railroad at $500 per acre.

Thomas testified that in his opinion condemnees' remainder was worth $500 per acre after the utility condemned the land for its right-of-way.

The only other opinion evidence of value after taking was that of TESCO's witness Daniels. He testified that the presence of the railroad had no effect upon the value of the remainder and that in his opinion it was worth $700 per acre before and after taking.

We hold that there was sufficient market data supporting condemnees' value evidence. "When a witness gives evidence that he is acquainted with market value, he is prima facie qualified to testify concerning value as an expert," and the question then becomes one of the weight of his testimony. *Jefferson County v. Cohrt,* 487 S.W.2d 444, 446 (Tex.Civ.App., Beaumont, 1972, no writ); *City of Houston v. McFadden,* 420 S.W.2d 811 (Tex.Civ.App., Houston, 14th Dist., 1967, writ ref'd n. r. e.).

## EVIDENCE OF DAMAGE TO REMAINDER

Henry Randall, a tenant who farms the Nelon land, testified that the railroad bisects the land in such a way that there would be considerable inconvenience in its future cultivation. TESCO urges that such testimony should not be considered as evidence of damage to the remainder because it does not relate to damage which interferes with the use of the land for small tract development. There was also testimony, however, that the highest and best use

of the land was for small-scale production of food and livestock.

■ Certainly the evidence was properly admitted. Evidence of interference with cultivation as a result of condemnation is an element which may be considered in awarding damages. *Texas Electric Service Company v. Etheredge*, 324 S.W.2d 322 (Tex.Civ. App., Eastland, 1959, no writ).

■ TESCO made no objection to the court's charge which instructed the jury to consider "all of the uses to which (the remainder) is reasonably adaptable and for which it either is or in all reasonable probability will become available with the reasonable future."

Exhibits introduced by condemnees, including photographs of portions of the land, also evidence the nature of the damage and its effects upon the remainder. These photographs showed parts of the farm before and after the construction of the railroad was begun, the types of cuts of land made, the types of fills used, and the railroad embankments constructed on the property.

We hold that condemnees met their burden to show the nature of the damage to the remainder, the effect upon various portions of the tract and the relationship of same to market value. *Coastal Industrial Water Authority v. Reynolds*, supra; *City of Houston v. McFadden*, supra; *State v. Scarborough*, 383 S.W.2d 839 (Tex.Civ.App., Texarkana, 1964, writ ref'd n. r. e.).

Condemnees having presented ample evidence to support the jury's findings to Special Issue No. 4 as to value after taking, we overrule TESCO's points 2 and 4.

ADMISSIBILITY OF EVIDENCE OF
FEAR IN DETERMINING MARKET
VALUE AFTER TAKING

TESCO's fifth point complains that the trial court erred in the admission of the opinion testimony of the value witness, Vernon Thomas, in regard to alleged reduction in market value of the condemnees' remainder land because of fear of a purported nuclear danger. TESCO asserts that no proper predicate was laid for Thomas's testimony that the fear of nuclear danger further lowered the value of the remainder to $350 per acre. It is our opinion that the necessary predicate was laid.

In answer to an interrogatory TESCO stated that one of the purposes of the railroad spur line was to carry nuclear waste away from the Comanche Peak site. At trial, Maurice Wendt, TESCO's engineering manager called by condemnees as an adverse witness, testified that the spent atomic fuel will first be stored at the plant site and then moved to another site for reprocessing.

He also testified that TESCO's answer to the interrogatory meant only that the railroad would be available for such use but that it was not certain that it would actually be so used because the plans for removal of the waste had not yet been made. He would not testify, however, that the railroad would not be used for the transportation of the waste.

■ The rule regarding the relevancy of proof of fear in the minds of the buying public is set out in *Heddin v. Delhi Gas Pipeline Company*, 522 S.W.2d 886, 888 (Tex.Sup., 1975). ". . . fear in the minds of the buying public on the date of taking is relevant to the proof of damages when the following elements appear:

"1. That there is a basis in reason or experience for the fear;

"2. That such fear enters into the calculations of persons who deal in the buying and selling of similar property; and

"3. Depreciation of market value because of the existence of such fear."

Thus condemnees were required to establish either an "actual danger forming the basis of such fear or that the fear is reasonable, whether or not based upon actual experience." *Heddin*, supra.

■ Condemnees' expert witness, Dr. Peter A. Girardot, is a university professor who teaches a course in solid waste management, including the disposal of nuclear waste. He testified that the railroad transportation of high-level nuclear waste across

condemnees' property presents an actual danger from escaped radiation along the ten-mile right-of-way because of the danger of accidents or sabotage along the route. He further testified that the fear is based upon fact, rather than fancy, delusion or imagination because of danger that the containers might rupture in an accident. He also testified that the hazards of transportation of nuclear waste were under study by the Nuclear Regulatory Commission.

It is true it was not proved that it was probable an event might occur causing the rupture of the containers and an escape of radiation. Nor was proof presented that there has as yet been a breach of a shipping container in commercial transportation of nuclear waste. But the rule in *Heddin* does not require that an accident of the type feared already have occurred; it is sufficient if there is a basis in reason for the fear.

TESCO also urges that the admission of fear in condemnees' case-in-chief was error under *Heddin*, supra. In that pipeline condemnation case, evidence of a pipeline accident which occurred after the date of taking was held inadmissible to substantiate allegations of fear of actual danger because it was not offered to rebut an assertion by the condemnor that the pipeline was not dangerous or that fear of any such danger did not affect market value. The court in *Heddin* stated "the general rule that compensation for land taken by eminent domain is measured by its market value at the time of taking would appear to require exclusion of evidence of all ruptures occurring after the date of taking. A rupture occurring subsequent to the date of taking could not have had an effect on market value as of the date of taking." 522 S.W.2d 886, 889.

TESCO has not complained of the introduction of any evidence of accidents or sabotage in the transportation of nuclear waste which occurred after June 3, 1975. Its contention apparently is that all evidence of fear should have been excluded from condemnees' case-in-chief and could have been offered only to rebut an assertion by TES-

CO that transportation of nuclear waste was not dangerous or that fear of any such danger did not affect the market value of the remainder. We do not interpret *Heddin* as support for this proposition. The rule in *Heddin* applies only to evidence of accidents occurring after the date of taking.

We hold that condemnees sufficiently demonstrated that the fear of nuclear danger from accidents or sabotage during transportation of nuclear waste is based in reason, thus establishing a proper predicate for Thomas's testimony as to reduced market value as a result of such fear.

The jury also had some evidence of the existence of fear in the Hood County area from the testimony of Maurice Wendt, TESCO's own engineering manager. Wendt testified concerning the public information program which TESCO instituted in Hood County at the time the planned construction of the plant was announced. He conceded that one of the purposes of the program was to allay fears of the public. Wendt further testified that Fort Worth newspapers, which circulate in Hood County, had carried articles on the dangers of transporting nuclear waste.

There were no comparable sales involving the ultimate question of how condemnations involving the particular element of fear had affected the market value of other remainder property. The instant case was the first in the area in which it was necessary to consider the propriety of admitting evidence of fear of such nuclear danger as a factor in a decrease of market value.

Of course there must be a first time for the happening of events, and the admission of Thomas's testimony was proper in this case. He was undoubtedly qualified. TESCO made no objection on the ground that he lacked any qualification. He testified that the general public had developed a fear caused by the intended use of the railroad, and he gave his expert opinion as to the reduced market value of the remainder of the Nelon property which resulted. TESCO's objection was merely that condemnees failed to lay a proper predicate for his testimony of decreased market value because of

the fear, and we have rejected that contention.

We overrule TESCO's fifth point.

## ON REMITTITUR

■ TESCO's sixth point asks that a remittitur be applied to that part of the court's judgment which established the damages based upon the difference, as found by the jury, in the values of condemnees' remainder before and after the taking.

We find no ground for a remittitur in this case, and we overrule this point.

The values were well within the range of the market value testimony of the expert witnesses. There is no indication of any passion or prejudice on the part of the jury, and there is no manifest excessiveness in the damage award of the judgment. *Urban Renewal Ag. of City of San Marcos v. Bethke,* 420 S.W.2d 803 (Tex.Civ.App., Austin, 1967, writ ref'd n. r. e.); 22 Tex.Jur.2d, Eminent Domain, Sec. 319, "Excessive or insufficient verdict," p. 443 (1961).

## OTHER EVIDENTIARY MATTERS

■ TESCO's seventh point complains that the trial court erred in overruling its objections to the admission of exhibits and in permitting condemnees' counsel to testify concerning them in the jury's presence. TESCO's eighth point complains that these exhibits employed an averaging process which did not constitute competent, admissible evidence in support of the jury's answers to Special Issues Nos. 3 and 4.

During his cross-examination of Daniels, TESCO's value witness, the attorney for condemnees used charts listing the four sales of properties which Daniels had previously testified were comparable to condemnees' remainder. Counsel for condemnees then advanced what he termed logical extensions of Daniels' prior testimony. Daniels rejected those conclusions as being based upon an incorrect appraisal procedure.

The conclusions shown on the exhibits included (1) a computation of the average

sale price ($656.50) of the four properties; (2) a computation of the difference in per-acre price between the oldest sale (March 1973) and the newest (September 1974) amounting to $375; and (3) a computation of the average monthly rate of increase ($20) over the 18-month period separating the two sales. Counsel for condemnees then added an increase of $180 based upon the $20 average monthly increase over the nine-month period extending from the last sale cited by Daniels to the date of taking on June 3, 1975. These computations resulted in the sum of $836.50 per acre as the value of condemnees' remainder based upon the "logical extension" of Daniels' own testimony.

TESCO made no objection to this method of cross-examination until the charts on which these computations were made were themselves offered in evidence. At that point TESCO objected to their admission for the reason that Daniels had denied their validity and counsel for condemnees had not taken the stand to prove them up.

We have examined this portion of the record and the events in the examination of the opposing witness leading up to the introduction of the exhibits. While it seems that condemnees' counsel made a jury argument at the evidentiary stage, there is nothing in what occurred which amounted to reversible error. T.R.C.P. 434, "If Judgment Reversed." It is our conclusion that the error, if any, was not such as was reasonably calculated to cause, nor did it probably cause the jury to return an answer to any issue in the verdict any different from what would have been returned had the error not occurred.

We overrule TESCO's seventh and eighth points.

■ By its ninth point TESCO complains that the trial court erred in overruling its "Supplemental" Motion for New Trial on the grounds of newly discovered evidence.

The evidence by which TESCO hoped to obtain a new trial is the Rasmussen Reactor Safety Study released by the Nuclear Regu-

[?]

latory Commission on December 1, 1975, the date this case went to trial.

There was testimony at the hearing on the motion that the Rasmussen Report contained the statement that it is not possible to estimate the probabilities of acts of sabotage which would result in danger or loss of life. TESCO sought to use this statement at a new trial to show that the opinion of Dr. Girardot, condemnees' expert witness, was not based upon scientific investigation of the risk involved in the transportation of nuclear waste material. TESCO asserts this statement is evidence that there is no basis in fact for the alleged fear.

At the hearing Dr. Girardot testified the Rasmussen Report did not attempt to analyze the hazards of nuclear waste transportation. He also testified it was not the study the Nuclear Regulatory Commission was making of the hazards of transportation of nuclear waste to which he referred at trial and which, upon completion, he would regard as having some basis in the science of probability.

There was also testimony at the hearing by TESCO's expert, Dr. C. William Garrard, Jr. Dr. Garrard was employed as a nuclear engineer and manager of nuclear fuel by Texas Utilities Service Company and was responsible for nuclear fuel at the Comanche Peak plant.

Dr. Garrard admitted on cross-examination that he did not attempt to obtain a copy of the report until after trial, although he had mentioned it to TESCO's attorneys prior to trial; that a draft copy had been available in 1974; and that on November 14, 1975 an article appeared in "Science", a periodical to which his employer subscribes. The article, which was admitted in evidence at the hearing, was critical of the Rasmussen Report because it did not analyze "the likelihood of catastrophes from sabotage or acts of war, or the risks involved in other elements of the fuel cycle, such as transportation and waste disposal".

Although he did not recall having read the "Science" article, Dr. Garrard also admitted that the Rasmussen Report concerns "the chances of people living within the vicinity of a nuclear power plant being injured or killed, or sustaining property damage as a result of a reactor failure inside the plant" or some other event occurring inside the plant.

TESCO's argument at the hearing was that the testimony of Dr. Girardot, condemnees' expert, might have been different at trial if he had the final Rasmussen Study, a position which Dr. Girardot expressly rejected.

We have examined this "newly discovered evidence" and fail to perceive how it bears upon the material issue of market value at time of trial. We hold that TESCO has not satisfied the requirements set forth in *Conwill v. Gulf, C. & S. F. Ry. Co.*, 85 Tex. 96, 19 S.W. 1017 (1892) and quoted with approval in *New Amsterdam Casualty Company v. Jordan*, 359 S.W.2d 864, 866 (Tex.Sup., 1962), viz: "A new trial will not be granted on the ground of newly-discovered evidence, unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purpose of impeachment."

We overrule TESCO's ninth point.

Judgment is affirmed.