**TEXAS ELECTRIC SERVICE COMPANY, Appellant,**

v.

**Floyd WEST, Appellee.**

**No. 17915.**

Court of Civil Appeals of Texas, Fort Worth.

Dec. 29, 1977.

Rehearing Denied Jan. 26, 1978.

Joseph A. Chandler, Stephenville, Cantey, Hanger, Gooch, Munn & Collins, and Jack C. Wessler and S. G. Johndroe III, Fort Worth, for appellant.

Locke, Purnell, Boren, Laney & Neely, and Wayne O. Woodruff, Dallas, for appellee.

## OPINION

HUGHES, Justice.

This is the fourth in a series of condemnation cases involving Texas Electric Service Company (TESCO) to come before this court. *Texas Elec. Service Co. v. Ragle*, 559 S.W.2d 454 (Tex.Civ.App.—Fort Worth 1977, no writ at present); *Texas Elec. Service Co. v. Wheeler*, 550 S.W.2d 297 (Tex. Civ.App.—Fort Worth 1976, affirmed in 551 S.W.2d 341 (Tex.1977); *Texas Elec. Service Co. v. Nelon*, 546 S.W.2d 864 (Tex.Civ.App. —Fort Worth 1977, writ ref'd n. r. e.). As in the previous cases, this case resulted from TESCO's construction of the first nuclear-powered generating plant in Texas.

On May 21, 1975, TESCO acquired an easement by condemnation across Floyd West's (appellee's) farm for a railroad to be built in conjunction with its nuclear-powered generating plant. TESCO does not complain of the jury's finding that the 2.044 acre easement had a value of some $1700.00. It does complain of the diminution in value of the remaining acreage. From the trial court's judgment that the 185 acres remaining after TESCO's taking of the easement were damaged in market value in the amount of $250.00 per acre, TESCO has perfected its appeal.

We AFFIRM in part and REVERSE and REMAND in part.

By its second and fourth points of error, TESCO contends that the trial court erred in rendering judgment for Floyd West, because there is no evidence to support the jury's answers to special issues nos. 3 and 4 with regard to the reasonable market value of the remainder (185 acres) immediately before and after its taking of the railroad right-of-way easement.

By its first and third points of error, TESCO contends that the trial court erred in overruling its motion for new trial, because the evidence is insufficient to support the jury's answers to special issues nos. 3

and 4 with regard to the reasonable market value of the remainder immediately before and after its taking of the railroad right-of-way easement.

In its answers to special issues nos. 3 and 4, the jury found that the before-taking value of the 185 acre tract was $850.00 per acre, while the value immediately after the taking was $600.00 per acre.

In considering each of TESCO's "no evidence" points, we must look only to the evidence favorable to the jury's finding and if there is any evidence of probative force to support the finding of the jury, such finding is binding on this court. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Floyd West, the landowner, testified that the 185 acre remainder was worth $1000.00 per acre before the taking on May 21, 1975, and had an after-taking value of $400.00 per acre. In explanation of why the land was diminished in value because of TESCO's taking of the railroad right-of-way, he testified that the railroad cutting his tract of land into two parcels would make it difficult for him to find a buyer for the land-locked parcel of land. There would be no way for a purchaser to get to the isolated, land-locked parcel without crossing the other parcel of land. Also, he pointed out that the operation of any railroad poses a danger to livestock and presents a danger of fire.

H. O. Ricks, the ranch foreman for Mr. West, testified that he was familiar with land values in the area, and that the 185 acre tract had a before-taking value of $1000.00 per acre and an after-taking value of $700.00 per acre. Further, he testified that Mr. West's land had been terraced and maintained, but the railroad right-of-way had cut the tract into two parcels. After the railroad was built, there was a detrimental alteration of the drainage on the land, resulting in two or three acres collecting sand. Also, there is no water on the back side of the land that is cut off. He concluded that the railroad made the land less desirable in the eyes of a prospective purchaser.

Joe Evans, a licensed real estate broker, testified that the 185 acre remainder was worth $850.00 an acre before the taking, but was only worth $490.00 per acre after the taking. Among other things, he testified that the pond was going to have silt in it, because the land had been disturbed in such a way as to cause erosion.

We overrule TESCO's second and fourth points of error, whereby it contends that there is no evidence to support the jury's answers to special issues nos. 3 and 4.

In considering TESCO's first and third points of error, which are "insufficient evidence" points, we must consider and weigh all of the evidence in the case and set aside the verdict and remand the cause for a new trial only in the event the jury's findings are so against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate*, supra.

Countering the value testimony given by Mr. West and his two witnesses, TESCO presented two witnesses on value to the jury. James W. Daniels, a real estate appraiser, testified that the 185 acres remaining had a before and after taking value of $750.00 per acre; i. e., the railroad had no effect on the value of the property. Another real estate appraiser, William Oswald, testified that the before and after-taking value of the 185 acre remainder was $775.00 per acre.

█ Considering all the evidence in the record on the before and after-taking value of the remaining 185 acres, we cannot conclude that the jury's answers to special issues nos. 3 and 4 are so against the great weight and preponderance of the evidence so as to be manifestly unjust. Accordingly, we overrule TESCO's first and third points of error.

By its fifth point of error, TESCO contends that the trial court erred in overruling its objections and exceptions in regard to the submission and form of special issues nos. 3 and 4, because such issues were not supported by the evidence. As to the form of these special issues, TESCO's point of error does not specify how the form of

these special issues was defective. Based upon the evidence in the record, some of which has been discussed in this opinion, we hold that the submission of special issues nos. 3 and 4 was supported by the evidence. TESCO's fifth point of error is overruled.

In its sixth point of error, TESCO contends that the trial court erred in overruling its objection to the testimony of Mr. West's witness, Joe Evans, concerning the alleged diminution in market value, because of fear of an accident in the transportation of nuclear waste. The point of error stated that such testimony was incompetent, prejudicial, without foundation, and constituted no evidence which could have aided the jury in the performance of its fact-finding function. TESCO's seventh point of error is that the trial court erred in overruling its objection to the closing argument of Mr. West's attorney concerning the alleged diminution in market value because of fear of a nuclear accident in the transportation of nuclear waste.

▬ *Tex.Const.* art. 1, § 17 provides: "No person's property shall be taken, *damaged* or destroyed for or applied to public use without adequate compensation being made, . . . ." (Emphasis added.) It is clear that fear in the mind of the buying public in the market on the date of the taking is one element that may be considered by the factfinder in assessing damages. *Heddin v. Delhi Gas Pipeline Company*, 522 S.W.2d 886 (Tex.1975). However, before testimony concerning this fear factor may be presented to the factfinder for its consideration, these three elements must appear:

> "1. That there is a basis in reason or experience for the fear;
>
> 2. That such fear enters into the calculations of persons who deal in the buying and selling of similar property; and
>
> 3. Depreciation of market value because of the existence of such fear." *Heddin* at 888.

Our supreme court further wrote in *Heddin*:

"To establish that there is a basis in reason or experience for the fear, it is incumbent upon the landowners to show either an *actual danger* forming the basis of such fear or that the fear is reasonable, whether or not based upon actual experience. Reduction in market value due to fear of an unfounded danger is not recoverable. [Citing authorities.] This rule is designed to exclude consideration only of those few situations in which the danger underlying the fear finds its basis in neither reason nor experience but is predicated rather on fancy, delusion or imagination." (Italics in original.) *Id.*

Having read the entire statement of facts, we must conclude that the requirements of the *Heddin* case were not met to support the introduction of the fear testimony before the jury. Cases showing the proper predicate to support testimony concerning fear as an element of damages in condemnation cases are *Texas Elec. Service Co. v. Ragle, supra,* and *Texas Elec. Service Co. v. Nelon, supra.*

▬ As for the introduction of the testimony concerning the fear factor without the proper predicate, this is not a situation where the harmless error rule can be applied. As this court wrote in *Texas Elec. Service Co. v. Nelon, supra,*

"We may not assume that the jury did not consider the fear factor . . . ." *Id.* at 866.

We sustain TESCO's sixth and seventh points of error.

The fear testimony and counsel's closing argument involving the fear factor, in the absence of the proper predicate, probably caused the rendition of an improper judgment in the case. Tex.R.Civ.P. 434. Accordingly, we must reverse the judgment of the trial court and remand the case for a new trial as to the diminution in value (if any) of the 185-acre remainder; however, we affirm the judgment of the trial court as to the value of the easement actually taken.

AFFIRMED in part and REVERSED and REMANDED in part.

Costs are taxed one-half against Texas Electric Service Company and one-half against Floyd West.